**FRANKLIN BRASS FOUNDRY CO. et al. v. SHAPIRO & ARONSON, Inc.**

(Circuit Court of Appeals, Third Circuit. December 21, 1921.)

No. 2715.

1. Patents ⬅222—Mark on patented article must state day of patent issue.

To comply with Rev. St. § 4900 (Comp. St. § 9446), the mark on a patented article must state the day, as well as the month and year, the patent was granted.

2. Patents ⬅222—Notice of infringement of article not marked must be as specific as required statutory mark; "due notice."

To constitute "due notice" of infringement of an unmarked patented article, which will entitle the patentee to recover damages for the infringement, under Rev. St. § 4900 (Comp. St. § 9446), the actual notice must be as specific as that required by the statute to be marked upon the article, and a mere statement to a defendant by a person unknown to him that his article is an infringement of a patent is not sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Notice.]

3. Patents ⬅222—"Damages," in Rev. St. § 4900 (Comp. St. § 9446), includes profits.

In Rev. St. § 4900 (Comp. St. § 9446), providing that, where the patented article has not been marked and no notice of infringement given, "no damages shall be recovered by the plaintiff," the word "damages" includes profits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage—Damages.]

4. Patents ⬅322—Where no infringement is found prior to filing of bill, there can be no accounting for damages or profits.

Under Rev. St. § 4921 (Comp. St. § 9467), providing that, "upon a decree being rendered * * * for an infringement," plaintiff shall be entitled to recover profits and damages, a decree finding infringement is a prerequisite to an accounting, and where by reason of failure to mark the patented article or to give notice as required by Rev. St. § 4900 (Comp. St. § 9446), no actionable infringement can be found prior to the filing of the bill, an accounting may not be directed for subsequent infringement.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by Shapiro & Aronson, Inc., against the Franklin Brass Foundry Company and A. Slotko. Decree for complainant, and defendants appeal. Modified and affirmed.

For opinions below, see 268 Fed. 551; 272 Fed. 176.

Hector T. Fenton, of Philadelphia, Pa., for appellants.

Dodson & Roe, of New York City (E. Hayward Fairbanks and J. Bonsall Taylor, both of Philadelphia, Pa., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. Shapiro & Aronson, Inc., by its bill of complaint filed January 26, 1920, charges the defendants, Franklin Brass Foundry Company, a corporation, and A. Slotko, with infringement of complainant's letters patent No. 5,296 for a design for a lighting fixture arm, and prays an injunction and an accounting. The joint and several answer of the defendants alleges, in part, that the plaintiff made and sold quantities of the arm without fixing thereon notice of the patent, as required by R. S. § 4900 (Comp. St. § 9446), and without, in the alternative, giving to the defendants, prior to the filing of the bill, any legally sufficient actual notice of the infringement. The court below found the patent valid and infringed, and "that the defendants were given actual notice of the patent and their infringement in 1919, and continued to sell after said notice." A decree was entered, granting an injunction and directing an accounting of profits from February 4, 1919, the date of the patent, and an accounting of damages "since defendants received notice of the patent." The defendants here challenge the findings of notice and subsequent infringement, and the decree in so far as it directs an accounting.

[1] R. S. § 4900, made it the duty of the complainant herein to give sufficient notice to the public of its patent by fixing upon the arm the word "Patented," together with the day and year the patent was granted, and directs that—

"In any suit for infringement, by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement, and continued, after such notice, to make, use, or vend the article so patented."

The marking fixed upon the patented arm by the complainant specified the month and year, but not the day, the patent was granted. The complainant does not contend that such marking meets the requirements of the statute. The court below held it insufficient, and we concur in that view. Hawley v. Bagley, Fed. Cas. No. 6,248.

[2] The evidence upon which rests the findings that the defendants were given actual notice of the patent, and that after such notice they continued to infringe, consists only of the testimony of the defendant Slotko, called, as under cross-examination, by the complainant. His testimony as to notice is very meager. It is in substance that a man called upon him and told him that the arm being sold by him (Slotko) was an infringement of a patent. It does not appear from the evidence that the man gave his name, stated for whom he was acting, or indi-

cated, either by its number, or the day and year it was granted, or by the name of the patentee, or by the character or subject-matter of the patent, what patent Slotko was charged with infringing. The statement made by the stranger to Slotko was, according to the latter's testimony, in our opinion no more than a mere accusation. If the actual notice given to Slotko was more complete than is shown by his testimony, the burden of so proving rested upon the complainant. This burden it did not meet. Actual notice must be actually proved, and cannot be assumed as a legal inference from any facts which amount not to actual proof of the fact, and we think that a defendant is not "duly notified," within the meaning of the statute, unless the facts with which he is supplied would, if fixed upon the patented article, constitute "sufficient notice." N. Y. Pharmical Ass'n v. Tilden (C. C.) 14 Fed. 740.

Nor do we find proof that the Foundry Company, the remaining defendant and the manufacturer of the arms sold by Slotko, was better notified than the latter. Here, again, the only evidence is the testimony of Slotko. It is limited to the statement that, after the stranger called upon him, he wrote to the Foundry Company. The letter was not introduced in evidence, nor were its contents otherwise proved. It may not be presumed that the information therein contained went beyond that given by the stranger to Slotko. Consequently the evidence, as we understand it, fails to show that prior to the filing of the bill of complaint either form of notice prescribed by the statute was given to either defendant. Manifestly, then, there is no opportunity to find that, prior to the filing of the bill, either defendant continued after notice to make, use, or vend the patented article.

[3] How do these findings affect the decree for an accounting? Under the express provisions of R. S. § 4900, the absence of notice, constructive or actual, to the defendants prevents recovery by the complainant of "damages" from either defendant for any act done by the latter—at least prior to the filing of the bill of complaint. If, however, the word "damages," as used in that section of the Revised Statutes, does not include "profits," the plaintiff is entitled to a decree directing an accounting of "profits" from February 4, 1919, the date of the patent; but if "damages," as there used, does include "profits," then it is plain that recovery of "profits" is likewise prohibited for any act done by either defendant—at least prior to the filing of the bill. Hence it becomes necessary to determine whether the word "damages," as used in R. S. § 4900, includes or excludes profits. The decisions of the District Courts upon this point undoubtedly show much contrariety in their views, thereby shrouding the question in some doubt. To remove the question from its present uncertainty, so far as that may be done by the deliberate judgment of this court, and to reach a satisfactory judgment, it will be necessary to review the course of legislation and judicial decisions, so far as it bears upon the matter, from the beginning, first observing, however, that the provisions of R. S. § 4900, denying damages to a complainant under the conditions there specified, had their origin in section 13 of the Patent Act of March 2, 1861 (12 Stat. 246), that courts of equity were at the time

of the passage of that act without jurisdiction to award to a complainant in a patent suit damages in addition to profits, and that the right of a complainant to recover in a court of equity damages in addition to profits, now provided for in R. S. § 4921 (Comp. St. § 9467), was first conferred by section 55 of the Consolidated Patent Act of 1870 (16 Stat. 198 [Comp. St. § 9467]).

The history of the jurisdiction in equity of the federal courts over patent suits was reviewed in Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975. Jurisdiction of cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions was first expressly conferred by Congress upon the Circuit Courts of the United States in equity by the Act of February 15, 1819 (3 Stat. 481, c. 19). Theretofore Congress had passed three statutes in execution of the power granted to it by the Constitution to promote the progress of science and useful arts. Each of those acts dealt only with actions at law. The first, passed April 10, 1790 (1 Stat. 109), made the infringer of a patent liable to forfeit and pay to the patentee such damages as should be assessed by a jury, and, moreover, to forfeit to the person aggrieved the infringing thing. The second, or Act of February 21, 1793 (1 Stat. 318), fixed the damages the infringer should forfeit and pay at a sum equal to three times the price for which the patentee had usually sold or licensed the use of the invention. The third, enacted April 17, 1800 (2 Stat. 37), again changed the rule, and required the infringer to pay to the patentee "a sum equal to three times the actual damage sustained by such patentee."

Mr. Justice Livingston, in the year 1811, sitting at circuit, in Livingston v. Van Ingen, 1 Paine, 45, Fed. Cas. No. 8,420, held that, Congress having confined the remedy for a breach of patent rights to an action at law, a Circuit Court of the United States sitting as a court of equity could not entertain cognizance of a bill to restrain the infringement of a patent, where both parties were citizens of the same state, and dismissed the bill. Congress supplied that defect of jurisdiction by the Act of February 15, 1819 (3 Stat. 481), which provided:

"That the Circuit Courts of the United States shall have original cognizance, as well in equity as at law, of all actions, suits, controversies, and cases, arising under any law of the United States, granting or confirming to authors or inventors the exclusive right to their respective writings, inventions, and discoveries; and upon any bill in equity, filed by any party aggrieved in any such cases, shall have authority to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of the rights of any authors or inventors, secured to them by any laws of the United States, on such terms and conditions as the said courts may deem fit and reasonable."

In 1825 Mr. Justice Thompson had occasion to consider, in Sullivan v. Redfield, 1 Paine, 441, Fed. Cas. No. 13,597, the nature of equity jurisdiction in patent suits and the effect of the act of 1819. He said:

"The equity jurisdiction exercised by the court over patents for inventions is merely in aid of the common law, and in order to give more complete effect to the provisions of the statute under which the patent is granted."

Referring to the act of 1819, he added:

"This act does not enlarge or alter the powers of the court over the subject-matter of the bill or the cause of action. It only extends its jurisdiction to parties not before falling within it. Before this act it had been held that a citizen of one state could not obtain an injunction in the Circuit Court for a violation of a patent right against a citizen of the same state, as no act of Congress authorized such suit. * * * This act removed that objection, and gave the jurisdiction, although the parties were citizens of the same state. But in the exercise of the jurisdiction in all cases of granting injunctions to prevent the violation of patent rights, the court is to proceed according to the course and principles of courts of equity in such cases. So that the questions presented in the present case are precisely where they would have been without this act."

The Supreme Court, in Stevens v. Gladding et al., 17 How. 447, 15 L. Ed. 155, said:

"There is nothing in this act of 1819 which extends the equity powers of the courts to the adjudication of forfeitures; it being manifestly intended that the jurisdiction therein conferred should be the usual and known jurisdiction exercised by courts of equity for the protection of analogous rights. The prayer of this bill for the penalties must therefore be rejected. The remaining question is, whether there ought to be a decree for an account of the profits. The complainant has not prayed for such an account, nor have the defendants stated one in their answer; but the bill does pray for general relief. The right to an account of profits is incident to the right to an injunction in copy and patent right cases. Colburn v. Simms, 2 Hare, 554; 3 Dan. Ch. Pr. 1797. And this court has held, in Watts et al. v. Waddle et al. 6 Pet. 389, that where the bill states a case proper for an account, one may be ordered under the prayer for general relief. See also 2 Pet. 612; 14 Pet. 156; 16 Pet. 195; 9 How. 405."

The act of 1819 was embodied in section 17 of the Act of July 4, 1836 (5 Stat. 117), the latter act making the jurisdiction of the courts of the United States in patent causes exclusive.

It now becomes important to learn from what aspect the Supreme Court has viewed profits as awarded in a court of equity. Seymour et al. v. McCormick, 16 How. 480, 14 L. Ed. 1024, decided in 1853, was an action at law. The court below had instructed the jury that a plaintiff, having established his right to a verdict against an infringer, was entitled to the "actual damages" he had sustained by reason of the infringement, and that such damages might be determined by ascertaining the profits which in its judgment he would have made had the infringer not interfered with his rights. In considering the assignments of error directed at the charge to the jury, the Supreme Court, after citing some hypothetical cases of infringement, said:

"In such cases the profit of the infringer may be the ony criterion of the actual damage of the patentee. * * * It is only where, from the peculiar circumstances of the case, no other rule can be found, that the defendant's profits become the criterion of the plaintiff's loss."

Dean v. Mason et al., 20 How. 198, 15 L. Ed. 876, decided at the December term, 1857, was a case of a bill for an injunction and account. It was there expressly held that the amount of profits, in general, is the *damage* done to the owner of the patent and that under certain circumstances the court has power to increase *the damages.* The court said:

"The decree was entered, on the report of the master, for the estimated amount of profits which the defendant, with reasonable diligence, might have realized; not what, in fact, he did realize. This instruction was erroneous. The rule in such a case is, the amount of profits received by the unlawful use of the machines, as this, in general, is the *damage* done to the owner of the patent. It takes away the motive of the infringer of patented rights, by requiring him to pay the profits of his labor to the owner of the patent. Generally, this is sufficient to protect the rights of the owner; but where the wrong has been done, under aggravated circumstances, the court has the power, under the statute, to punish it adequately, by an increase of the *damages*." (Italics ours.)

It is not without significance that the Congress, within three years after the decision in Dean v. Mason, embodied in the Act of March 2, 1861, § 13 (12 Stat. 246), the provision that—

"on failure of which [the marking of the article or the labeling of the package], in any suit for the infringement of letters patent by the party failing so to mark the article the right to which is infringed upon, no damage shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement, and continued after such notice to make or vend the article patented."

We think it a reasonable presumption that the word "damage," found in the act of 1861, was there used in the same generic sense as in Dean v. Mason. But we need not rest on this presumption. After the passage of the act of 1861, but before the passage of the act of 1870, authorizing a court of equity to award "damages" to a plaintiff, the case of Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, was considered by the Supreme Court. That was a suit in equity in which, it having been decided before the passage of the act of 1870, profits, only, and not damages, could be awarded by way of pecuniary relief. After quoting the thirteenth section of the act of 1861, the court (9 Wall. at page 801, 19 L. Ed. 566) said:

"It is said that the bill contains no averment on this subject [notice], and that the record is equally barren of proof that any such notice was ever given to the defendants, except by the service of process, upon the filing of the bill. Hence, it is insisted that the master should have commenced his account at that time, instead of the earlier period of the beginning of the infringement. His refusal to do so was made the subject of an exception. The answer of the defendants is as silent upon the subject as the bill of the complainants. No such issue was made by the pleadings. It was too late for the defendants to raise the point before the master. They were concluded by their previous silence, and must be held to have waived it. It cannot be considered here."

It was there held that the point of notice was waived by the pleadings. A waiver presupposes the existence of a right. The court assumed, without question or intimation of doubt, that the statute applied to a suit in equity, in which "profits" only were involved. A like assumption by the same court is found in Sessions v. Romadka, 145 U. S. 29, 49, 12 Sup. Ct. 799, 36 L. Ed. 609. That case arose after the passage of the act of 1870 conferring upon a complainant the right to recover in equity damages in addition to profits, as now provided in R. S. § 4921, but the point raised therein was that the plaintiff should not recover profits, owing to a noncompliance with the requirements of R. S. § 4900. The court overruled the contention of the defendant.

upon the ground that it was not properly raised by the answer, but again gave no intimation that R. S. § 4900 was not applicable to profits. It cited with approval both Rubber Co. v. Goodyear, supra, and Allen v. Deacon, 10 Sawy. 210, 21 Fed. 122. In the latter case the court, referring to R. S. § 4900, said:

"I think, however, the fair construction of the provision of the statute is that *the recovery* shall not be had upon infringements occurring while the infringer is ignorant of the patent under the conditions stated in the statute, but shall be limited to the infringements arising after notice." (Italics ours.)

In the case of Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, apparently begun before the passage of the act of 1870, exception was taken to the allowance of interest upon the profits found by the master to be due to the plaintiff. Mr. Justice Strong, speaking for the court (14 Wall. at page 653, 20 L. Ed. 860), said:

"We add only that in our opinion the defendant should not have been charged with interest before the final decree. The profits which are recoverable against an infringer of a patent are in fact a compensation for the injury the patentee has sustained from the invasion of his right. They are the measure of his damages. *Though called profits, they are really damages,* and unliquidated until the decree is made. Interest is not generally allowable upon unliquidated damages." (Italics ours.)

This rule was followed in Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54, and in other cases. In Birdsall et al. v. Coolidge, 93 U. S. 64, 23 L. Ed. 802, it was held that prior to the passage of the act of 1870 the owner of a patent, whose rights had been infringed, had his election between two remedies, namely, he might proceed in equity and recover the gains and profits which the infringer had made by the unlawful use of his invention, the infringer in such a suit being regarded as the trustee of the owner of the patent as respects such gains and profits, or he might sue at law and recover as damages compensation for the injury without regard to the infringer's gains or losses. That the recovery in each instance was considered by the Supreme Court as "damages" was, however, made clear. Referring to the recovery at law it said:

"* * * The *measure of damages* in such case being not what the defendants had gained, but what the plaintiff had lost."

And with respect to the recovery in equity added:

"Gains and profits are still the proper *measure of damages* in equity suits, * * *" (Italics ours.)

The same court in Root v. Railway Co., 105 U. S. 189, 214, 26 L. Ed. 975, dealing with the contention that the infringer of a patent right is by construction of law a trustee for the patentee of the profits derived from his wrong, and that a court of equity, in the exercise of its acknowledged jurisdiction over trusts and trustees, will require him to account as trustee, without reference to any other relief, and after referring to cases cited by counsel apparently sustaining this contention, made it plain that the infringer is not a trustee and that profits constitute merely a measure of damages. It was there said:

"It is true that it is declared in those cases that, in suits in equity for relief against infringements of patents, the patentee, succeeding in establish-

ing his right, is entitled to an account of the profits realized by the infringer, and that the rule for ascertaining the amount of such profits is that of treating the infringer as though he were a trustee for the patentee, in respect to profits. But it is nowhere said that the patentee's right to an account is based upon the idea that there is a fiduciary relation created between him and the wrongdoer by the fact of infringement, thus conferring jurisdiction upon a court of equity to administer the trust and to compel the trustee to account. That would be a reductio ad absurdum, and, if accepted, would extend the jurisdiction of equity to every case of tort, where the wrongdoer had realized a pecuniary profit from his wrong. All that was meant in the opinions referred to was to declare according to what rule of computation and measurement the compensation of a complainant would be ascertained in a court of equity, which, having acquired jurisdiction upon some equitable grounds to grant relief, would retain the cause for the sake of administering an entire remedy and complete justice, rather than send him to a court of law for redress in a second action."

As hereinbefore stated, R. S. § 4900, had its origin as section 13 of the act of 1861, and became section 38 of the Consolidated Patent Act of 1870 (Comp. St. § 9446). R. S. § 4921, had its origin as section 55 of the latter act. The word "damages," as used in R. S. § 4921, unquestionably means damages of a compensatory character. Birdsall et al. v. Coolidge, 93 U. S. 64, 69, 23 L. Ed. 802. And we think that, if the use of the word "damages" in section 38 and again in section 55 gives rise to a presumption that the word is used in the same sense in each section, that presumption is more than overcome by the history of the two sections and the decisions of the Supreme Court.

In view of what has been hereinbefore said, we see no escape from the conclusion that the word "damages," as used in R. S. § 4900, includes profits. We think this conclusion in accord with prior decisions of this court. In American Caramel Co. v. Thomas Mills & Bro., 162 Fed. 147, 89 C. C. A. 171 (C. C. A. 3), in which no proof was made that the complainants marked their machines, or otherwise notified the defendants as required by the statute (R. S. § 4900), "an account for anything preceding the filing of the bill" was refused, and the infringement prior to notice declared to be "presumptively innocent." This case was followed in Maimen v. Union Special Mach. Co., 165 Fed. 440, 91 C. C. A. 384 (C. C. A. 3). The Circuit Court of Appeals for the Second Circuit, in Gibson v. American Graphophone Co., 234 Fed. 633, 148 C. C. A. 399, sustained the court below in refusing an accounting because of the failure of the complainants to comply with the requirements of section 4900 of the Revised Statutes regarding the giving of notice. There are many other cases bearing upon the question in hand, some of which are in accord with the views here stated, but we think it unnecessary to review them.

[4] The conclusion that no recovery either of profits or of damages of a compensatory character may be had for infringements occurring while the infringer is without one or the other forms of notice prescribed by the statute, and the findings that in this case the defendants were without notice of either kind, at least until the bill of complaint was filed, would put an end to the question of accounting, were it not for the fact that it has been held that the filing of a bill of complaint is actual notice under the statute, and that profits and damages may be recovered in such suits for infringements, if any, occurring

subsequent to the filing of the bill. It was so ruled by this court in Maimen v. Union Specialty Co., supra. It was likewise so decided in the Second Circuit in Westinghouse Elec. & Mfg. Co. v. Condit Elec. Mfg. Co. (C. C.) 159 Fed. 154, and in Underwood Typewriter Co. v. Elliott-Fischer Co. (C. C.) 171 Fed. 116. Such a right was denied by Judge Dallas in Matthews & Willard Manufg. Co. v. National Brass & Iron Works (C. C.) 71 Fed. 518, and by Judge Mayer in Gibson v. American Graphophone Co., affirmed on appeal in 234 Fed. 633, 148 C. C. A. 399. We think, however, that the question has long been settled by the Supreme Court in Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 616, 9 Sup. Ct. 168, 172 (32 L. Ed. 538), where it was said:

"The position that an accounting for profits earned subsequently could be claimed in this suit is not tenable. An accounting for such profits after suit can be demanded only where the infringement complained of took place previously and continued afterwards."

So far as we have been able to discover, the rule there laid down has not been annulled or modified by that court, and, in view of our finding that the evidence does not show infringement after notice prior to the filing of the bill, that case authoritatively denies to the complainant herein a right to a decree for an accounting for profits. It is manifest, from the express language of this court in Maimen v. Union Specialty Co., 165 Fed. 440, 441, 91 C. C. A. 384, that the case of Marsh v. Nichols, Shepard & Co. was not called to its attention, and we assume that other courts whose opinions coincide with that of this court in the Maimen Case were also without the benefit of the decision in the Marsh Case. It seems clear that in general no distinction can be made between the right to recover subsequent profits and the right to recover subsequent compensatory damages under like circumstances, and that, consequently, a denial of a decree for an accounting for compensatory damages, if any, sustained after the filing of the bill, could be safely rested upon the ruling in Marsh v. Nichols, Shepard & Co., supra; but there is also another ground upon which such denial may here be placed.

The right to recover compensatory damages in a court of equity rests solely upon R. S. § 4921, and that section makes the entry of a decree of "infringement" a prerequisite to the recovery of damages. In a case where R. S. § 4900, is not involved, infringement, as so used in R. S. § 4921, means, of course, any infringement prior to the filing of the bill, and, an account being ordered, it may include, not only infringements prior to the filing of the bill, but those (at least of the same kind) up to the date of the filing of the master's report. But, as said by the learned judge in the court below, in his opinion upon the motion for a reargument:

"When there is a controversy, however, with respect to a compliance with R. S. § 4900, two facts must be found by the court. One is that the notice, constructive or actual, required by the statute has been given, and the other, that acts of infringement followed the notice. The duty of making neither of these findings can be delegated to a master. The finding is a judicial act, which cannot be delegated. Both facts are in controversy."

We think this a correct statement of the law, and that it necessarily implies that the word "infringement," as used in R. S. § 4921, means, when R. S. § 4900, is involved, "infringement after notice," and this is a conclusion to which we are likewise led by Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426, Lowell Manuf'g Co. v. Hogg (C. C.) 70 Fed. 787, American Caramel Co. v. Thomas Mills & Bro., 162 Fed. 147, 89 C. C. A. 171 (C. C. A. 3), and many similar cases, which hold in effect that, in order to recover damages for infringement prior to the filing of the bill, there being no waiver, express or implied, the complainant must allege that the articles sold by him were marked as required by the statute or that actual notice of infringement was given to the defendant. Clearly, then, under such allegations, the only infringement alleged, and, consequently, the only infringement for which a decree may be rendered for an accounting for compensatory damages for acts of the defendant occurring even prior to the filing of the bill, is an infringement after notice. As no act of infringement after notice occurred in this case prior to the filing of the bill, and as under the express provisions of R. S. § 4921, a decree for infringement is a prerequisite to the recovery of compensatory damages, there is no evidence in this case to support a decree for infringement, and consequently there may be no decree for an accounting for compensatory damages.

The soundness of the decree, in so far as it directs the issuance of the writ of injunction, was not questioned. As the answer of the defendants denied the validity of the patent, we think that there was no error in admitting the depositions, and that the stage of the case at which they should be admitted was within the discretion of the trial court.

For the reasons herein stated, we are of the opinion that the complainant was not entitled to recover either profits or compensatory damages, and that the decree should be so modified.