ROBINSON et al. v. JEFFREY MFG. CO.

SAME v. BOARD OF PUBLIC EDUCATION OF SCHOOL DIST. OF PITTSBURGH.

(District Court, W. D. Pennsylvania. January 25, 1926.)

Nos. 1121, 1116.

1. Patents ⬅328—Forwardly inclined blade of rotary fan held not equivalent of rearwardly inclined blade of patented fan.

The forwardly inclined blade of defendant's fan *held* not the mere equivalent of the rearwardly inclined blade of plaintiff's patent No. 866,887 for a rotary mine fan.

2. Patents ⬅328—No. 866,887, for rotary mining fan, held anticipated and invalid, as concerns claimed infringing fan.

Patent No. 866,887, for rotary mining fan, *held* anticipated and invalid so far as concerns alleged infringing fan.

3. Patents ⬅222—Proof of marking or of infringement after notice necessary for suit after expiration.

Patent of plaintiff having expired, so that his only possible remedy was recovery of damages and profits, it was necessary for him, under Rev. St. § 4900 (Comp. St. § 9446), to prevent dismissal, to prove he had marked his device or given notice, which was followed by infringement.

In Equity. Two suits by James R. Robinson and another, one against the Jeffrey Manufacturing Company, and the other against the Board of Public Education of the School District of Pittsburgh, tried together. Bills dismissed.

In No. 1121:

Clarke & Doolittle, of Pittsburgh, Pa., for plaintiffs.

Cushman, Bryant & Darby, of Washington, D. C., W. Wilson Carlile, of Columbus, Ohio, and Green & McCallister, of Pittsburgh, Pa., for defendant.

In No. 1116:

C. M. Clarke and Clarke & Doolittle, all of Pittsburgh, Pa., for plaintiffs.

J. Rodgers McCreery and Green & McCallister, all of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The above-entitled cases, involving alleged infringements of the same patent, by agreement, were tried together. Each of the defendants is charged with the infringement of patent No. 866,887, granted on September 24, 1907, for a rotary fan. From the date of the patent it is apparent that it has expired, and that in the instant actions only a remedy in damages is sought. The board of public education is charged with the use of fans infringing plaintiffs' patent manufactured and sold by Hersh Bros. Company of Allentown, Pa., while the defendant in the other suit, the Jeffrey Manufacturing Company, is charged with the manufacture and sale of similarly infringing fans.

The defendants allege invalidity of plaintiffs' patent by reason of anticipation, lack of invention, and noninfringement. Each defendant further contends that plaintiff is not entitled to a decree for damages or profits by reason of his failure to prove either that his patented device was marked "Patented," with the day and year when the patent was granted, as required by section 4900, R. S. (Comp. St. § 9446), or that specific notice was given to defendant of his infringement, and that he continued to make, use, or vend the infringing article after such notice.

Plaintiff relies upon claims 2, 3, and 4 of his patent:

"2. A rotary fan comprising a hub, full length blades' carried by the hub, rings connecting the respective edges of the blades, and a series of short peripheral blades located between successive full length blades and carried by the rings.

"3. A rotary fan comprising a hub having a head, full length blades carried by the hub and the head, rings connecting the outer portions of the respective longitudinal edges of the blades, and a series of short peripheral blades between successive full length blades and carried by the rings.

"4. A rotary fan comprising a hub, substantially tangential blades carried by the hub, rings connecting the outer portions of the respective longitudinal edges of the blades, and a series of short peripheral blades disposed between successive tangential blades and carried by the rings, the peripheral and tangential blades being inclined rearwardly with respect to the direction of rotation of the fan."

As shown by the drawing appended to the application for his patent, plaintiff's device was a single rotary fan. It was composed of a hub with a conical flange, called a "head" in specifications, which was mounted on a shaft. Three long fan blades, tangentially arranged in relation to the hub, were riveted to flanges on the hub and head. The ends of these blades, at their outer edges, were attached to rings. On these rings, between the long blades, were attached a number of short peripheral blades. The long blades were turned backward near their outer edge with respect to the direction of rotation of the fan, and the short blades were inclined backward at the same angle as the rearwardly inclined parts of the long blades. In addition to this in-

clination rearwardly, the long blades, according to the specifications of the patent, were twisted transversely, for the expressed purpose of strengthening them. The blades were shaped in such a way as to give a large "eye," or intake, to the fan.

The patentee testified that he made no fans in exact accordance with the draft appended to the patent since 1907, so that during practically the whole life of the patent its specifications were never exactly followed. A model, offered in evidence as an example of plaintiff's present construction, has four long blades instead of the three of the patent (specifications), forwardly, not rearwardly, curving blades, and the long blades are welded to the hub, head, and solid ring of the fan, instead of being riveted to flanges.

The fans of each of the defendants differ from that of the patent by having six long arms instead of three, and the inclination of all blades is forward instead of backward. The blades of the Jeffrey construction are welded to the hub and head, while the board of education fans are riveted to flanges carried only by the head, a difference not requiring notice. The blades are not twisted transversely in defendants' fans.

The specifications leave the reader somewhat in the dark as to what respect, or in what function, plaintiff claimed superiority for his fan over other mine fans. After stating that the invention claimed had for its object to provide an improved fan for use in mines and similar places, he says: "A further object of the invention is to provide a novel assemblage of the hub and the blades of the fan, whereby the number of full length blades may be reduced to the minimum and at the same time maintain the desired strength and rigidity and to draw in the air through the open side of the fan, a plurality of short peripheral blades being employed between the full length blades for the purpose of discharging the air in a powerful current through the periphery of the fan." (Lines 17–25, p. 1, Specifications.)

At line 67, p. 1, of Specifications, it is said: "Each full length blade 11, of which there are three, * * * is inclined to engage the head throughout the length of the latter and is secured to the adjacent rib 10 by suitable fastenings 13."

At line 93, p. 1, of Specifications: "By reference to Figs. 1 and 3 of the drawings, it will be noted that as one portion of the inner end of the blade is connected to the tangentially disposed rib 10, and the other portion of the same edge is connected to the substan-

10 F.(2d)—25

tially radial flange 20, the blade is slightly bowed or twisted transversely, whereby said blade is stiffened without increasing its weight."

At line 25, p. 2, of Specifications: "The present peculiar assemblage of the full length blades and the hub produces the desired strength and rigidity for the blades in a very simple and efficient manner, whereby arms radiating from the hub and other extraneous stiffening means are obviated, thereby producing a relatively light fan, while at the same time maintaining the necessary strength and durability thereof."

Reading the foregoing quotations, we may infer that the patentee thought that he had, while reducing the weight, made a more powerful fan than its predecessors in the art by changing the shape of the blades, and by increasing the space theretofore taken up by blades and supporting arms, by reducing the number of long blades, thus increasing the amount of air taken into the fan by the cone-shaped orifice.

When we attempt to apply the impressions gained by a reading of the specifications in connection with the claims of the patent, we are compelled to revise those impressions, as in the claims nothing whatever is said about the decrease in number of long blades and increase in the size of the intake, nor is any claim made in connection with the transverse twisting of the blade. The claims, considered as a whole, set forth a hub and head, a tangential connection of the long arms of the fan with hub and head, long blades rearwardly inclined to the direction of rotation and joined at their edges to rings, and a series of short peripheral blades, inclined as the ends of the long blades, carried by the rings, and situated between the long blades.

[1] Taking up the claims individually, we find No. 5 to be the most specific of the claims in suit. In our judgment, the claim of infringement is not sustained, in so far as the shape of the blades is concerned. Defendants' fans each have the long and short blades inclined forwardly, that is, in the direction of the rotation of the wheel, while the claim calls for rearwardly inclined blades. Plaintiffs' counsel has urged that this variation in form was immaterial; that the forwardly inclined blade was a mere equivalent of the blade inclination of plaintiffs' structure. To so hold, in our opinion, would be an undue extension of the rule as to equivalents. We find, from the testimony herein, that a material difference in function and performance exists between the forwardly and rearwardly

inclined blades. In any event, plaintiff was permitted to patent a machine, not a function, and in the interpretation of his claims they cannot be widened, particularly when, as here, the specifications have so particularly described and stressed a rearwardly inclined long blade.

Lines 105–112, p. 1, of Specifications, follow: "Upon reference to Fig. 1 of the drawings, it will be noted that the portion 11a of the fan which is connected to the ring 16 is bowed to present a front concaved face, and the flange 20, to which the inner edge portion of the blade is secured, terminates short of the outer edge of the ring 19 to permit of the concaved portion 11a of the blade being inclined rearwardly with respect to the direction of rotation of the fan."

When we consider this adaptation of the other parts of the device to secure this inclination of blades, and the fact that rearward inclination of the blades was fashionable in fan construction for a few years prior to the patent, we have little doubt that the patentee, at the time of his application, considered his peculiar backward inclination near the periphery a vital part of his construction.

[2] In view of our finding (post) relative to the condition of the art when the application for the patent was filed, our holding that a forwardly inclined blade is not the equivalent of one rearwardly inclined is immaterial, because a number of patents have been introduced in evidence which show conclusively, we think, that blades curved in both directions were then old in the fan art. And not only has plaintiffs' fan been anticipated in the matter of blade inclination, but also in its other material features, such as the tangential relation of the blades to the hub, the method of blade attachment to hub and head and rings, and the placing of a series of short peripheral blades between the long blades. Certain of the patents offered in evidence in themselves show practically every feature of plaintiffs' fan.

The language of claims 2 and 3 is quite broad, it will be noticed. The second and third differ in that the second declares the full length blades are carried by hub, while the third affixes them to the hub and head. The fourth claim is the same as the second, in effect, except for the addition of the limitation of the rearwardly inclined blades, already mentioned, and that the blades are declared to be tangential to the hub. The second and third claims, under some circumstances, would require the application of further limitations fixed by the specifications; but the features requiring limitation do not relate to the defendants' fans, and there is no need to mention them.

A patent anticipatory of nearly every feature of the claims of the patent in suit is the Newton British patent No. 3,078, granted in 1879. It is for an improvement upon patent No. 2,233, and appears to be a patent upon a blower, but the specifications contemplate its adaptation to mines. It discloses blades tangential to a center disk, equivalent to the head, and inclined both forwardly and rearwardly, and has a series of peripheral blades between the long blades. The attachment of the blades is apparently to the head but is not stated. Fig. 7 of the drawing, it is stated, shows an exhaust fan for mines.

Another anticipation of many features of the patent in suit was the Waddle British patent No. 16,619 (A. D. 1890), for mine fans. The long blades are declared to be attached to the hub, the method of attachment not being given. They extend radially from the hub and incline rearwardly. Between the long blades a short peripheral blade is shown by the drawing. The patentee, in the specifications says: "$B^2$ are short blades arranged between the plates B (long blades) as usual. In combination with this arrangement of blades I may provide the periphery of the fan with splayed out rings. * * *" In the claims the patentee speaks of the short blades as "the ordinary enclosed blades."

British patent No. 27,286, to Meidinger, granted in 1903, originally granted in France in 1901, also has many features in common with the patent in suit. It is for an improvement in centrifugal fans. The drawing shows six long fans radiating from the hub and conical head. They are inclined, but the direction is not given. A number of short peripheral blades are shown between the long blades. The claim, following, is in effect the same as No. 2 of the patent in suit: "1. In centrifugal fans or ventilators, the employment of a vane-wheel provided with a limited number of main vanes all or a part of which extend to the wheel boss, and at its outer periphery, with a ring or crown comprising a large number of pallets or vanes which are narrow in the radial direction, straight or curved, and arranged radially or at an inclination with respect to the wheel radius, substantially as described with respect to the accompanying drawing."

The function of the small blades is declared in the specifications: "This crown of

closely arranged vanes is situated at the extreme periphery of the rotating wheel and causes the displaced air to escape around the whole of the periphery of the wheel in a uniform manner and without shock, thus avoiding eddies and diminishing tangential pressure upon the main vanes."

There are a number of other prior patents which incorporate the various features of the Robinson patent, but we do not desire to take upon us the labor of describing all of them. We do call attention to one of them, however. The Stewart (U. S.) patent, No. 1,724 (A. D. 1840). It was for a blower, but the patentee called attention to the fact that the principle of action was independent of any particular mode of gearing, or dimension of parts. The drawing shows four long blades rearwardly inclined. They are arranged tangentially to the hub, and two short peripheral blades are placed between the long blades.

The effect of an examination of the prior patents offered was to convince us that nothing unknown to the art was disclosed by plaintiffs' patent claims. This finding is confirmed by an examination of chapter 13 of "Heating and Ventilating Buildings," by R. C. Carpenter, published in 1902. The figures there shown disclose practically all features of the patent. Pages 334–343.

In our judgment the patent in suit was not valid, in so far as the infringement alleged in the instant action is concerned. This conclusion requires a decree dismissing the bill.

[3] Under the present condition of the proof a similar decree would have been required for another reason. As has been stated, the patent has expired, and the only remedy possible to plaintiffs was the recovery of damages and profits. But to entitle him to profits and damages, it was incumbent upon him to show compliance with the requirements of section 4900, R. S., which, as a foundation to recovery, requires plaintiff to show, either that he has marked his device, "Patented," with the date of the patent, or that he has given defendant proper notice of his patent and its infringement, and that the latter has continued his infringement after such notice. Franklin Brass Foundry Co. v. Shapiro & Aronson (C. C. A.) 278 F. 435. The plaintiff has failed to comply with the provisions of section 4900, R. S. In view of our finding that the patent was invalid, this failure needs no further elaboration.

Let a decree be drawn in accordance with the foregoing opinion.