### STEINTHAL v. ARLINGTON SAMPLE BOOK CO.
No. 9357.

District Court, E. D. Pennsylvania.

March 24, 1937.

Harry Langsam, of Philadelphia, Pa., for plaintiff.

Walter T. Fahy, of Philadelphia, Pa., for defendant.

MARIS, District Judge.

A bill in equity was filed in this case for an injunction restraining the defendant from infringing a patent and for an accounting of profits. The facts are as follows:

The plaintiff having invented a new and useful improvement in loose-leaf books, applied on July 15, 1933, for a patent thereon which was issued January 2, 1934, No. 1,941,634. The invention relates to loose-leaf books in which the leaves are held in place by binder posts passing through holes in the leaves and in flaps at front and back attached to the binder. The object of the invention was to hide the binder posts so as to improve the appearance of the book without substantially increasing its cost of manufacture. This was accomplished by adding to the front flap or plait an additional folding flap through which the binder posts are inserted and which when folded over conceals the heads of the posts from view. An additional folding flap is also provided on the back flap or plait which when folded over conceals the other ends of the binding posts

644

from view. The validity of plaintiff's patent is not contested by the defendant.

The plaintiff has licensed M. Steinthal & Co., Inc., to manufacture and sell books under his patent and that company has manufactured under the license over 200,000 books, largely loose-leaf books used for displaying samples in the textile trade. Defendant is also in the business of manufacturing and selling loose-leaf books for displaying samples. In 1935 and 1936 prior to filing the bill in this case, defendant manufactured loose-leaf sample books which embodied plaintiff's invention and which infringed the patent in suit. The construction of these books was copied by the defendant from a book manufactured by M. Steinthal & Co., Inc., in July, 1933, which embodied plaintiff's invention, but which contained no notice that the same was patented or that a patent therefor had been applied for. The defendant had no actual notice of the plaintiff's patent or that the books it was manufacturing infringed the patent, until April 2, 1936, when the subpœna and bill in this case were served upon it. Immediately thereafter, defendant discontinued manufacturing the infringing books and has manufactured none of them since.

■ There was no real dispute in this case as to the validity of the patent or as to the infringement of it by the defendant so that the right of the plaintiff to injunctive relief is clear. The only question remaining is as to whether the plaintiff is entitled to an accounting of profits in respect of defendant's infringement. In considering this question, we are met at the outset by the statute (35 U.S.C. § 49 [35 U.S.C.A. § 49]), which makes it the duty of all. patentees and of all persons making or vending any patented article for or under them to give sufficient notice to the public that the same is patented, either by fixing thereon the word "patent" together with the number of the patent, or by fixing to it or to the package wherein it is inclosed a label containing a like notice. This statute further provides that "in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented." The word "damages" as used in this statute includes profits. Franklin Brass Foundry Co. v. Shapiro & Aronson (C.C.A.) 278 F. 435.

■■ In the present case, I have found that the book made by the plaintiff's licensee which the defendant copied contained no such notice and I have further found that the defendant received no actual notice of the patent prior to the institution of the suit. It is admitted that the defendant ceased infringing as soon as it was notified through the service of the bill in equity upon it. It follows that the plaintiff is not entitled to an accounting of profits in respect of the books manufactured by the defendant prior to receiving notice of the patent, unless the rule laid down by the statute is rendered inapplicable by the fact that the book, which the defendant copied and which contained no notice of the patent, was manufactured and sold by plaintiff's licensee prior to the time the patent was issued.

I do not think that this fact rendered notice unnecessary, however. The book was admittedly manufactured after the patent had been applied for and in my opinion it was the duty of plaintiff's licensee to give notice of that fact if he desired to enforce his right to an accounting of profits. While the statute does not expressly refer to articles manufactured during the period the patent application is pending in the patent office, I am satisfied that the law does not impose upon the members of the public the burden of ascertaining at their peril whether an article manufactured and sold for public use is covered by a pending patent application. To hold otherwise would be most unreasonable in the light of the statute imposing no such burden in the case of articles manufactured and sold under applications which have actually ripened into patents, especially when we consider that constructive notice as to these is not implied even though they are officially published and are readily accessible to any one searching for them. This is not true, however, of mere applications for patents not yet finally acted on in the Patent Office. Information as to them is not readily accessible. Obviously, a person should not be held bound by constructive notice as to pending applications which have not been made public, when he is not so bound in the case of issued patents which are a matter of public record.

I accordingly conclude that the plaintiff is entitled to a perpetual injunction as prayed for, but is not entitled to an accounting of profits. An appropriate decree may be entered.