## HAZELTINE CORPORATION v. NATIONAL CARBON CO., Inc., et al.

### No. 261.

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1931.

Drury W. Cooper, C. Blake Townsend, and H. Frank Wiegand, all of New York City, for appellants.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, Willis H. Taylor, Jr., and R. Morton Adams, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The Hazeltine patent sued on, claims 1, 2, 5, and 13, is for plate circuit neutralization, a specific form of eliminating the undesirable effects of regeneration in audion amplifiers. Hazeltine Corp. v. Wildermuth (C. C. A.) 34 F.(2d) 635. The court found infringement as well as validity. The principal argument against validity below and here is an anticipation urged in the form of the BC—59—A army amplifier. We reiterated our belief in the validity of this patent in Jones v. Freed-Eiseman Radio Corp., 47 F. (2d) 174, decided January 5, 1931. We have pointed out an advance over the Hartley and Rice patents, Radio Corp. of America v. Twentieth Century Corp. (C. C. A.) 19 F. (2d) 290, in the matter of plate circuit neutralization, 34 F.(2d) 635, 639. Hartley's patent was the first to apply an external neutralizing circuit to the neutralization of the grid plate capacity coupling within the audion of a radio receiving set. Rice's patent added to the Hartley neutralizing circuit a neutralizing capacity, also called a condenser. Rice so arranged his neutralizing circuit that both the disturbing current and the neutralizing current exist in the grid circuit. But the Hazeltine arrangement contrasts with these by neutralizing in the plate circuit. This we heretofore pointed out. 34 F.(2d) 635, 639.

The drawings and testimony as to BC—59—A army amplifier were before us (other than the physical exhibit), and we found on that record that it did not anticipate. 34 F.(2d) 639. We do not think the reception in evidence of the physical exhibit changes our conclusion there reached.

The remaining question is whether appellant's Eveready receiver used plate circuit neutralization and infringes. The appellant did not put in any evidence as to the operation of its device, but it relied upon the insufficiency of appellee's proofs as its prima facie case. The arrangement of appellant's Eveready receiver shows the neutralizing circuit consisting of a condenser $C_2$ and a neutralizing coil $L_2$ connected in series between the grid and filament system as in Fig. 2 of Hazeltine's patent drawings. This is plate circuit neutralization; it consists of capacitively coupling the grid of the audion and a secondary of said transformer to cause equal capacity currents to flow to and from the grid whereby such currents are prevented

*Fig. 2.*

from flowing between the grid and the filament system as is described in claims 1 and 2. It comprises an auxiliary coil and neutralizing capacity connected in series between the grid and filament system which are so proportioned that variations in the plate potential cause equal currents to flow through the coupling capacity and through the neutralizing capacity, and prevents such currents from flowing between the grid and filament system as is described in claim 5. It comprises a capacity connected between the grid of each audion and a point in the plate circuit of said audion of opposite alternating current polarity to that of the plate as is described in claim 13. Appellee's expert clearly points out wherein appellant's receiver is a tuned radio frequency receiver employing

three vacuum tubes or audions as radio amplifiers. The set is free from oscillations, squeals, or whistles. Each radio frequency amplifying audion is neutralized by means of plate circuit neutralization. Appellant's expert points out that the neutralization in Exhibit 5 (Eveready receivers) comprises "A voltage or current or disturbance arising in the plate circuit and tending to flow toward the grid through the grid plate capacity, being led away from the grid by the neutralizing condenser $C_2$ to a point of opposite alternating current polarity to that of the plate, thus providing neutralization and eliminating currents flowing, or disturbing currents flowing between the grid and filament."

The coil connected between the plate and filament system is shown in Fig. 2 of the patent in suit ($L_1$) and in appellant's receiver (Exhibit 5). In the appellant's receiver there is an auxiliary neutralizing coil $L_2$ and a neutralizing capacity $C_2$ connected in series between the grid and filament system. These coils and the neutralizing capacity are so proportioned that variations in the plate potential cause equal currents to flow through the coupling capacity and through the neutralizing capacity and prevent such currents from flowing between the grid and the filament system. This is covered in claim 5, and is fully explained by McDonald's testimony.

In appellant's multistage audion amplifier (as shown in Exhibit 5), there is in each stage an audion together with means for neutralizing the capacity coupling between the grid and the plate circuit of that audion, comprising a capacity $C_2$ connected with the grid G of the audion and the point X, which, as McDonald explains, is a point of opposite alternating current potential in the plate circuit. This is covered by claim 13, and it infringes that claim.

But it is argued that an electromagnetic coupling is an essential element of the Hazeltine patent arrangement, that the appellant's receiver has no such coupling between coils $L_1$ and $L_2$. It is true as to both receivers that an electromagnetic coupling is essential. Both have them. In every neutralizing circuit, the essentially necessary reversed potential is produced by reversely connected electromagnetically coupled coils. Appellant's receiver has this essentially necessary reversed electric coupling. In its arrangement, it is the direct electromagnetic coupling between the primary and secondary and the plate circuit transformer that creates the reversed potential which is built up and localized at the point X (Exhibit 5) by the insertion of the neutralizing portion of the secondary $L_2$ at the proper point. In appellant's receiver the Ls of the secondary coil is coupled by a direct electromagnetic coupling to the primary coil $L_1$ and a portion Ls of the secondary is reversed so that the potential produced by the coupling is a reversed potential. The neutralizing coil $L_2$ is then inserted in direct conductive coupling with the portion Ls of the secondary in such a position that it will produce the necessary point of opposite alternating current potential to which the neutralizing condenser $C_2$ is connected. Thus the appellant's receiver has an opposite alternating current potential which is secured for neutralizing purposes from a reversed electromagnetic coupling. This reverse potential is secured in the plate circuit, and the appellant connects the neu-

PLAINTIFF'S EXHIBIT 5

Simplified Circuit Diagram One Radio Frequency Amplifier Stage of Eveready Receiver Series 30

TO NEXT STAGE

INPUT OR GRID CIRCUIT

tralizing condenser between the grid and a point in the plate circuit where this opposite

Fig. 8.

alternating current potential is effective. Hazeltine (Fig. 8) selects that point in the secondary circuit of the plate circuit transformer which is at the high potential end of the secondary winding. Appellant instead inserts the coil $L_2$ so as to build up the reverse potential at point X in the plate circuit, likewise in the secondary circuit of the plate circuit transformer, and connects the neutralizing condenser between that point and the grid.

The appellant makes the auxiliary coil a part of the tuned circuit which is closely coupled electromagnetically by means of another coil to the primary, thus indirectly accomplishing what appellee accomplishes directly, inasmuch as Hazeltine couples his auxiliary coil directly to the primary coil, whereas in appellant's receiver the auxiliary coil is coupled to the primary through the intermediary of the tuned circuit which is itself coupled to the primary coil. There is sufficient equivalency between the direct coupling and the appellant's indirect coupling.

But appellant argues that $L_2$ is not a secondary of the transformer and is not in the plate circuit of the audion; that $L_2$ is in the grid circuit of the next audion. McDonald sufficiently establishes that $L_2$ and $L_s$ together make up the entire secondary of the transformer. The whole of the secondary circuit of the plate circuit transformer is a part of the plate circuit. In Fig. 8, of the patent in suit, the neutralizing coil is a secondary coil of the plate circuit transformer, and the point in the plate circuit at the lower end of that secondary coil to which the neu-

tralizing condenser is connected is also the secondary of the plate circuit transformer. The neutralizing coil $L_2$ (Exhibit 5) is subject to that plate potential through the point X (Exhibit 5) because the potential of the plate circuit is impressed on the secondary circuit of the plate circuit transformer by the direct electromagnetic coupling between the primary $L_1$ and the portion $L_s$ of the secondary, and this potential reversed by the reversal of the connections to $L_s$ is effective between the upper end of $L_s$ and the filament through the point X and through the neutralizing coil $L_2$. It is clear that the appellant has accomplished plate circuit neutralization within the claims of the patent in suit, and that all the claims sued upon are infringed.

Decree affirmed.