**GENERAL MOTORS CORPORATION et al. v. LEER AUTO SUPPLY, CO., Inc.**

No. 438.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1932.

AUGUSTUS N. HAND, Circuit Judge, dissenting in part.

Nelson Littell, of New York City (Maurice B. Landers, of New York City, of counsel), for plaintiffs.

Frederick S. Duncan, of New York City, for defendant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit is for a bearing shim of hard metal to which is securely anchored a soft metal face. Such a shim may be used in any split bearing, and is especially useful with split bearings using forced feed lubrication, as is now common on the crank shaft of internal combustion engines, because it permits such a close approach of the shim face to the rotating shaft that there is no appreciable avenue left for the escape of the lubricating oil forced into the bearing through holes in the shaft; furthermore, it does not do any damage as would a shim made entirely of hard metal if such a shim were permitted to bear upon the turning shaft.

General Motors is the owner of the patent, and Laminated Shim Company, Inc., the other plaintiff, is the exclusive licensee. The defendant is a dealer within the Southern district of New York in soft metal faced shims manufactured by National Motor Bearing Company, Inc., of Los Angeles, Cal. This manufacturer is defending the suit.

At the opening of the trial, counsel for the plaintiff elected to rely on claims 3 to 8, inclusive. These claims follow:

"3. A combined shim and bearing comprising a substantially U-shaped spacing portion made from a comparatively hard and non-yieldable metal, and a facing portion made from a comparatively soft bearing metal within which the free ends of said spacing portion are embedded to thereby provide a unitary structure.

"4. A combined shim and bearing comprising a spacing portion made from a comparatively hard and non-yieldable metal and a facing portion made from a comparatively soft bearing metal, a part of said spacing portion being embedded in said facing portion to thereby permanently connect said portions together, and the unitary structure thus provided having a hole to accommodate a securing bolt.

"5. A combined shim and bearing comprising a spacing portion made up of a plurality of superposed hard and non-yieldable metallic plates, and a facing portion made from a bearing metal and adapted to form a part of a bearing, said parts being permanently joined together, the unitary member thus formed having a hole to receive a securing bolt.

"6. A combined shim and bearing comprising a plurality of superposed U-shaped laminæ made from a hard and substantially non-compressible metal, and a facing portion made from a bearing metal and with which the free ends of said laminæ are permanently connected to thereby form a unitary structure.

"7. A combined shim and bearing comprising a plurality of superposed U-shaped laminæ made from a hard and resistant metal, and a facing portion made from a softer and more easily compressible bearing metal and within which the free ends of said laminæ are embedded, to thereby provide a unitary device.

"8. A combined shim and bearing comprising a plurality of superposed U-shaped laminæ of different thicknesses one from another and made from a resistant and substantially non-compressible metal, and a facing portion made from a more easily compressible bearing metal and within which the free ends of said laminæ are embedded, to thereby provide a unitary article."

A shim may be of whatever size the particular bearing in which it is used requires. Its primary purpose is to permit the wear in the bearing to be readily taken up by providing a removable spacer between the halves of the bearing proper, and the lamination of the shim is merely an aid in the take-up process. One or more of the laminæ can be peeled off easily to give a uniform reduction in thick-

ness over the entire surface of the shim. On split bearings lubricated by the splash system an opening along the shaft where the bearing halves were held apart by the shim was rather desirable as it provided a means for the oil to get in to the face of the shaft turning in the bearing and also served somewhat to cool the bearing. With the advent of forced-feed oiling, the oil pressure from within the shaft had a tendency to push oil out through the space between the face of the shim and that of the shaft to cause an undesired loss in the oil pressure by the loss of oil past the shim and in an internal combustion engine also made it smoke.

Such forced oiling began to be used widely in automobile engines when they were constructed to run at high speeds. In 1917, the patentee, who was chief engineer of the Northway Motor & Manufacturing Company, undertook to develop a shim which could be used in low-priced automobile engines made with a minimum of hand labor in fitting the bearings. He knew that the shim had to be of metal hard enough to hold the halves of the bearing apart when they were tightly bolted and so keep them from pinching the shaft and that the side of the shim which must bear upon the shaft to prevent the escape of oil must be of metal softer than that in the shaft to prevent scoring. So much was obvious. By soldering soft metal to the edge of the shim, he got something that would do what he desired, but found that soldering did not produce such a union between the hard and soft metals of the shims that they would withstand handling satisfactorily or stand up under reaming in the bearing. He then embedded the soft metal in the hard by dovetailing and obtained a union sufficiently strong to give good results. His preferred construction had a U-shaped spacer of hard metal.

Just when the patentee produced this shim is in controversy. The District Court found that this was not earlier than the middle of August, 1917, and that he reduced his invention to practice about the middle of the following October. His application was filed April 24, 1919, and his patent issued June 28, 1921. We believe the evidence fairly supports the findings of the District Court as to the dates of conception and reduction to practice, and accordingly accept them. This patent provided a useful and satisfactory shim, and was extensively used for a short time until Darrach disclosed a better method of manufacture by the use of pressure to join the soft metal to the hard. His patent is No. 1,417,039, issued May 23, 1922. Since Darrach, the plaintiffs have used his shim.

On the question of validity, the defendant relies upon anticipation as shown by the patent to Frost, No. 801,519, granted Oct. 10, 1905, for a journal bearing and on four instances of prior public use of shims which are claimed to anticipate.

Frost provided a rather complicated V-shaped bearing with the entire top half of the portion which came in contact with the shaft made of adjustable take-up strips tipped with soft metal and lying side by side at an angle to the shaft. These strips were separately adjustable relatively to each other and to the shaft and were provided with bolts which permitted the adjustments to be made to compensate for wear. Frost did not have a split bearing, and so had nothing which required a shim to keep solid bearing surfaces apart and permit take-up. Nothing was needed to hold the solid sides of the bearing from pinching the shaft, and, even if the clamping bolt used to hold them in fixed relation after adjustment did squeeze that portion somewhat out of shape, though it is unlikely that the use of so much force was ever necessary to secure them in place, no impingement upon the shaft would be caused. The Frost construction cannot be held to anticipate, for the perfectly simple and perfectly good reason that no shims were used in it.

There was some testimony to the effect that, as early as 1909, employees in the Laing garage at Plainfield, N. J., were accustomed to repair automobile engines by putting drops of solder along the edges of shims in the crank shaft bearing to fill up the space between the shim proper and the shaft. This evidence was at most less than enough to show any embedding of the soft solder in the shim, and it consisted wholly in the memory of workmen; was a hand repair operation; was without proof of the effect reaming would have had upon it; and did not, as it should to show anticipation, prove the prior use beyond a reasonable doubt. Parker v. Stebler et al. (C. C. A.) 177 F. 210. Unless oral testimony is supported by documents or devices, it must be clear and strong to establish prior use. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154. With the burden on the defendant, Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, such evidence must go beyond a reasonable doubt to establish the fact. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 F. 415. And this evidence did not meet the test.

Diamond Patent Co. v. S. E. Carr Co. (C. C. A.) 217 F. 400.

It was shown that the Packard Motor Car Company made automobiles with forced feed lubrication in the crank shaft as early as 1911. These engines had but slight clearance between the bearing halves, and such thin shims were used that it was thought the space left would be too small to cause oil trouble. Sometimes, when the careful workmanship on these high grade engines did not produce the desired result, the bearings were repaired by filling the space with solder. This was done only when fitting at the factory was not close enough, and that the cost factor of such construction would have made it prohibitive in low-priced engines seems probable. However that may be, there was no embedding of metal in metal, and only the union which solder alone would give.

There was evidence that an automobile called the Stephens Salient Six was sold in September, 1917, with engines regularly equipped with babbitt-faced shims in the crank shaft bearings. The proof consisted in part of a blueprint showing that a babbitt-faced shim was used September 10, 1917, and the notebook of a motor assembler which shows a notation, "Special plunger, babbitt shims," were used on motor No. 10,388 under date 9—17—17. This witness testified that this was the first entry in his book concerning babbitt-faced shims. The District Court was of the opinion that the evidence showed the Stephens use of babbitt-faced shims to have been before the conception of the invention of the patent in suit. The evidence makes the correct finding of the fact difficult, but the shim whenever used had merely a babbitt face soldered on, and must have had the inherent infirmities of that weak union which the patent in suit with its embedded construction was designed to, and did, overcome. It did not anticipate this patent, for it has not been shown to have had the secure union of parts of the patented shim.

The last, and in some respects the best, attempt to show anticipation, is found in the evidence relating to the use of a babbitt-lined Z-shaped part in the bearings used in the engines of the United States steamship Vestal, which was built at the Brooklyn Navy Yard in 1908. These members were made to fit between the halves of the split bearings and so to interlock with them that the correct alignment was preserved under the stress set up in operation. They had babbitt faces and removable thin strips of brass placed away from the bearing surface so that adjustment could be made for wear by removing the brass strips as required. The Z-shaped member was 17 inches long, .37⁄8 inches wide, and 1½ inches thick. The space filled by the thin brass strips was one-quarter of an inch, and this space with the brass fillers provided the adjusting means. These brass pieces were, we think, the shims, and the Z-shaped portion was a part of the bearing surface, not so because of its size, but because it performed the function only of a part of the bearing. These bearings, instead of being the comparatively simple two-piece split bearings with shims commonly found in automobile engines, had the additional Z-shaped members, plus the bearing "halves," plus the brass shims. These brass shims were not babbitt-faced. The fact that some babbitt would be pushed against them when the bearings were reamed and stay in the space left for adjustment was but an incident of that process and not a soft metal facing of the shim. All babbitt facing was confined to the bearing itself of which the Z-shaped liner so faced was a component part.

 The patentee was the first to produce a soft metal faced shim with a hard metal back with the different materials of its composition so well joined together that they could be used economically in low-priced work, and claims 3, 4, 6, 7, and 8 covering his dovetail construction have not been shown to be anticipated. We leave the question of invention to be considered with claim 4. Claim 5 is broadly for a laminated shim with a soft metal face. There was nothing novel in lamination, and the claim is so broad that the Packard shim is an anticipation. That being so, we prefer to put no reliance upon the Stephens shim.

Claim 4 is for a shim comprising a hard metal spacer with a soft metal face embedded in the spacer when the two are joined. This was broadly the construction the patentee disclosed. It is true that it now seems to have been a rather obvious and easy thing to use the old dovetail joint in putting on the soft metal face, but it must be remembered that we are dealing with thin strips of metal having laminæ much thinner, and when we know that the soft face had been put on with solder at least since the Packard use in 1911 and it was left for the patentee to show this improved construction in 1917, it would go too far for us to say there was no invention. The grant of the patent is prima facie proof that the patentee was the first inventor of the shim he disclosed and of its novelty. Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L.

Ed. 1017. As the defendant has failed to produce evidence which overcomes this prima facie case, this broad claim is valid. Coffin v. Ogden, supra; Washburn v. Gould, Fed. Cas. No. 17214, 3 Story, 122, 142. The prior use of soft-faced shims left a narrow field for the patentee to enter, but we think he has entered it.

The shim sold by the defendant has a soft metal face secured to the hard metal spacer as shown in the patent to Johnson, No. 1,-635,753, July 13, 1927. This construction features a laminated shim with one of the leaves extending out from the face beyond the other sheets. This projecting leaf is provided with holes, or corrugations or otherwise so made that the soft metal is embedded in it and held securely throughout the entire length of the shim face. There is no U-shaped spacing portion as in claims 3, 6, 7, and 8 of the patent in suit, and, if any virtue resides in such construction, the defendant's shim certainly does not make use of it. Those claims are not infringed. Claim 4, however, does read directly on the defendant's structure, in that the soft metal face is embedded in a part of the hard spacing portion, and we agree with the District Judge that infringement of this claim has been proved.

The three claims of the patent 1, 2, and 9, which were not among those counsel for the plaintiffs stated were relied upon when the trial began, were all held invalid in spite of the plaintiffs' insistence that they were not in issue.

None of them are based on embedding the soft metal in the spacer to secure the distinctive union of the two metals which was the gist of the advance made by the patent over the prior art, and they all stand the same as claim 5 in this respect. What has been said to indicate the invalidity of claim 5 applies also to these claims. We need only mention that claim 2 also was tied to the U-shaped spacer and not infringed. The important question as to these three claims is whether the court had the power to include them in the decree.

The suit was brought upon the entire patent, and issue was joined by answer to the complaint which was based upon one claim as much as any other. In the record on appeal immediately under the heading "Prima Facie Proofs" there is this: "(Plaintiff relies on claims 3 to 8, inclusive)." This statement in parenthesis is not attributed in the record to anybody, but we shall assume that it shows the substance of what counsel for the plaintiffs then stated. The defendant's attorneys made no comment, and the introduction of evidence began. Since suit had been brought on all the claims and issue had been joined, the plaintiffs had put the validity of every claim in issue. The District Court passed upon the patent as a whole, and decided what the pleadings presented for decision. We leave out of consideration whether the parties could have agreed to limit the issues to certain named claims. That was not what was done. The plaintiffs merely elected not to press these three claims. This was but a matter of choice affecting the conduct of the trial, if at all, in so far as the election influenced the introduction of evidence. That is wholly speculative now. The issues were not changed by any action of the court, and no request for such action was made. It is plain that the trial court considered the issues included all the claims as covered by the complaint and decided them on the evidence before it. The plaintiffs were accorded a full opportunity to support the issues they had tendered, and no informal disclaimer of reliance upon claims after the trial began not recognized by the court or agreed to by anybody could change the issues made by the pleadings. If a suit on a patent could be split up at the election of the plaintiff after issue joined, a plaintiff could, with impunity so far as costs were concerned, put a defendant to unlimited trouble and expense in preparation to defend and in defense of unwarranted claims if only he were astute enough to renounce them from time to time as the trial progressed and it became apparent that they could not be supported. In Marshall v. Bryant Electric Co. (C. C. A.) 185 F. 499, it was held that a decree, after hearing on the merits dismissing a complaint alleging infringement of all claims of a patent upon which issue had been joined by answer, was conclusive as to the entire patent, although the complainant at the trial voluntarily limited his proof and claim of infringement to certain specified claims. So in Great Northern Ry. Co. v. General Railway Signal Co. (C. C. A.) 57 F.(2d) 457, the intention of the court to pass upon all the claims in issue where ten only of a large number were selected as typical was emphasized, and it was held that the decree covered all the claims. In the instant case the intent to include all claims in the decree is clear, and we now have no occasion to consider the opposite situation where the trial court expressly refrained from passing upon all claims as in the decree involved in Haynes v. Union Carbide & Carbon Corporation (C. C. A.) 46 F.(2d) 4. We hold only that the decree

below was within the issues as they were joined on the pleadings and as they were allowed to remain throughout the trial, and so was within the power of the court to grant. Claim 5, which was expressly relied on, was invalid as well as these three. There was no error in denying costs to the plaintiffs, Suddard v. American Motor Co. (C. C.) 163 F. 852; nor in refusing an accounting, since neither statutory nor actual notice was shown, Gibson et al. v. American Graphophone Co. et al. (C. C. A.) 234 F. 633.

Decree affirmed.

AUGUSTUS N. HAND, Circuit Judge (dissenting in part).

I concur in the opinion of the majority except as to claim 4, which I think should have been held void for lack of invention.

Shims with babbitt facings soldered on hard metal were old and are indeed still in commercial use. Claim 4 is sought to be supported because it calls for an embedment of the spacing portion of the shim in the facing of soft metal. But embedment by dovetailing is shown in United States patent No. 1,158,862 to Sanford, which describes a method of making a journal bearing with a facing of babbitt metal embedded in a bronze foundation strip. To be sure the babbitt facing of Sanford was not placed on a shim but served as a lining for the entire journal bearing. But the advantage of having babbitt facings for shims had long been known, and to employ a familiar method of attachment in the place of soldering or welding did not involve an inventive step. Frost in United States patent No. 801,519 used strips of metal with embedded babbitt facings. These strips were not intended like shims for removal in order to provide for the tightening of the bearing, but the reference is very close, since Short has to rely on embedment of his shim in babbitt metal to differentiate claim 4 from the prior art. The same argument may be made with an even stronger reason as to the Vestal prior use.

If the Short patent had resulted in any startling commercial success, I might feel that claim 4 should stand. But no such success has been shown. The proof of any large use of the shim described in the Short patent is not convincing. The plaintiffs soon adopted a shim of a different and better construction made under the United States patent No. 1,417,039 to Darrech. None of the references now relied on to invalidate claim 4 of Short's patent were before the Patent Office. If they had been, it seems unlikely that such a broad claim would have been allowed.

Attachment in various ways of a facing of babbitt metal to hard metal was not only well known before Short's invention, but, as I have pointed out, it had been effected by embedment (a) by Sanford, (b) by Frost, and (c) by those who built the machinery for the steamship Vestal—all in journal bearings. I cannot believe that attaching soft metal to a shim in a way long used for other mechanical parts involves any inventive skill. Bullock v. General Electric (C. C. A.) 162 F. 28, at page 34.

The decree should be modified so as to dismiss the bill so far as it alleges infringement of claim 4 for lack of invention.