## HAZELTINE CORPORATION v. RADIO CORPORATION OF AMERICA.

District Court, S. D. New York.
Sept. 21, 1937.

Henry T. Kilburn, of New York City, for plaintiff.

Stephen H. Philbin, of New York City (John B. Cunningham, of New York City, on the brief), for defendant.

WOOLSEY, District Judge.

The plaintiff has withdrawn its first three exceptions.

Its other exceptions, Nos. 4–21, are all overruled, and the special master's recommendation that there should not be an accounting herein is hereby approved and adopted.

The defendant's exceptions, owing to the special master's decision in its favor and my adoption thereof, now raise merely moot questions and will not be considered.

I. Revised Statutes § 4900, as amended February 7, 1927, c. 67, 44 Stat. 1058, title 35 United States Code § 49 (35 U.S.C.A. § 49), first imposes a duty on patentees and those in privity with them, saying: "It shall be the duty of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented."

Then the method of marking which shall give such notice is prescribed as follows: "Either by fixing thereon the word 'patent', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice: Provided, however, That with respect to any patent issued prior to April 1, 1927, it shall be sufficient to give such notice in the form following, viz.: 'Patented', together with the day and year the patent was granted."

Then comes the sanction for breach of the statutory duty thus prescribed and the statute continues thus: "and in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented."

Therefore there are two statutory foundations for a claim for damages against an infringer on behalf of a patentee by, for, or under whom patented articles are made and sold: (1) Marking in accordance with the statute, and (2) notice to the infringer.

II. This suit was filed November 28, 1927, and is based on United States patents Nos. 1,533,858 and 1,648,808.

The bill of complaint was double-barrelled in regard to the plaintiff's acts to safeguard its right to damages in pursuance of the statute. It alleged on this point in paragraph 12: "* * * that apparatus manufactured under said Letters

Patent No. 1,533,858 and embodying the inventions thereof has been marked, ever since the issuance of said Letters Patent, by affixing thereto the word 'Patented', together with the day and year the Patent No. 1,533,858 was granted, and that defendant has been notified of the issuance of U. S. Letters Patent No. 1,648,808."

III. At the commencement of the trial of this cause before me the parties stipulated on the minutes "that the issue of whether or not, since the issuance of the patent in it and prior to the alleged infringement by defendant, apparatus manufactured by license under said Letters Patent has been marked with the proper notice as provided by Revised Statutes Section 4900, is reserved to such accounting proceedings, if any, as may be ordered, without prejudice to the respective rights of the parties hereto."

IV. On September 14, 1931, in deciding the case, I held that the theretofore unadjudicated patent No. 1,648,808 was invalid for want of invention, and, following the decision of the Circuit Court of Appeals in Hazeltine Corporation v. Wildermuth, 34 F.(2d) 635, decided July 1, 1929, and Hazeltine Corporation v. National Carbon Co., 47 F.(2d) 573 (decided February 2, 1931), as to the validity of United States patent No. 1,533,858, held, Hazeltine Corporation v. Radio Corporation of America (D.C.) 52 F.(2d) 504, that the defendant had infringed that patent. Accordingly I gave the plaintiff an injunction, and ordered a reference to William Parkin, Esq., as special master, to have determined this reserve issue as to marking of articles manufactured under patent No. 1,533,858, and consequently whether there should be an accounting for any infringing articles made and sold by the defendant.

The plaintiff did not appeal from my decision in respect of the invalidity of United States patent No. 1,648,808; the appeal by the defendant from the interlocutory decree entered on my decision in respect of the validity of United States patent No. 1,533,858 and the infringement thereof resulted in affirmance in a short per curiam opinion filed June 6, 1932, Hazeltine Corporation v. Radio Corporation of America (C.C.A.2) 59 F.(2d) 203, 204.

V. Investigation preparatory to commencing the hearings herein before the special master, and possibly their experience in 1931 and early in 1932 in an accounting under the same patent in a litigation with the Atwater Kent Company in the Eastern District of Pennsylvania, apparently satisfied the counsel, then representing the plaintiff, that they could not safely rely on marking as a basis for their accounting. Consequently they made a motion, which came on before me in November, 1932, five years after the complaint was filed and after the affirmance of the interlocutory decree, based on patent 1,533,858, in the plaintiff's favor, to change the basis for the accounting from marking to notice.

I denied this motion on the ground of laches as well as other grounds fully set forth in my opinion thereon, Hazeltine Corporation v. Radio Corporation of America (D.C.) 1 F.Supp. 758.

VI. The proceedings under the accounting herein have been—to put it mildly—rather sedate.

On March 20, 1936, this cause was, for the purposes of the accounting, consolidated by order of this court with equity 50—141, Hazeltine Corporation v. General Electric Company and Radio Corporation of America, 19 F.Supp. 898, in which an interlocutory decree had been entered by consent on January 31, 1933.

It is because of this consolidation order that the special master's report is captioned in both causes, and contains a reference to evidence about notice of infringement to the defendants in the second suit, equity 50—141, wherein notice was alleged in the complaint.

In the report, here under consideration, which was signed March 10, 1937, the special master found—the issue of notice being precluded by my decision in the motion in the instant suit, equity 43—351—that, owing to failure to mark under Rev. St. § 4900, as amended (35 U.S.C.A. § 49), the plaintiff was not entitled to any accounting under this suit, equity 43—351, but that, owing to due notice of infringement which it alleged in the second suit, equity 50—141, it was entitled to an accounting, from certain dates, not material here, as against both the defendants therein.

VII. In order to clear this somewhat complicated procedural situation, on March 19, 1937, the parties to the instant cause consented to an order providing that the order for consolidation in respect of accounting dated March 20, 1936, be terminated, and that the special master be directed to make separate reports in the two suits.

In accordance with this order of severance, the special master's report was, on June 16, 1937, filed herein with appropriate findings of fact.

To this report, in so far as applicable to this suit and the master's findings of fact herein, both parties have filed exceptions as to which the following observations may be appropriate herein:

■ The plaintiff has abandoned its first three exceptions to the master's findings of fact and now accepts these findings in their entirety and consequently its remaining exceptions together now amount to a demurrer to the evidence.

The plaintiff's contentions which need here be noticed are that, the special master erred in the conclusions of law deduced by him from the facts because he refused to find as a matter of law:

A. That, since the plaintiff is a non-manufacturing patent owner, it does not come within the provisions of United States Code, title 35, § 49, 35 U.S.C.A. § 49 (Rev. St. § 4900, as amended), and does not need to show compliance therewith in order to entitle it to an accounting.

B. That the bill of complaint constituted notice of infringement, and, since the defendant continued infringement after service upon it of the bill of complaint, the plaintiff is entitled, without further showing, to an accounting at least from November 28, 1927, the date of the filing of the bill of complaint.

C. That defendant, having continued infringement after notice, by service of the bill of complaint, has by its conduct taken itself out of the protection of U.S. Code, title 35, § 49, 35 U.S.C.A. § 49 (Rev. St. § 4900, as amended), and must account for its entire infringement in this suit.

■ The defendant's exceptions which naturally do not attack the special master's conclusions are merely safeguarding exceptions and are all directed to certain findings of fact by the special master as to the quantum of marking from July 1, 1927.

Due, however, to the special master's recommendations and findings as to fact and law which I have adopted, it seems to me clear that the defendant's exceptions, if they did not initially merely raise moot questions, certainly now play no other role in the situation before me. It is, therefore, unnecessary to deal further with them.

■ VIII. A patent suit in equity commonly seeks two forms of relief whereof both depend on the existence of a cause of action at the time when the suit is commenced. Those forms of relief are: (1) An injunction against further trespass on the plaintiff's patent monopoly; and (2) damages, and an accounting for the trespasser's profits.

■ A cause of action for an injunction in a patent suit is not stated unless it be alleged that there has been an infringement of the patent before suit is brought, and an injunction will not be granted unless, assuming validity of the patent, such infringement be proved at the trial.

■ A cause of action for damages or for an accounting for profits in a patent suit is not stated unless it be alleged that by marking of the patented articles or notice to the defendant the plaintiff has complied with Revised Statutes, § 4900, as amended (35 U.S.C.A. § 49), and such cause of action is not proved unless it be shown at the trial that such marking occurred or such notice was given before the suit was brought. Cf. Franklin Brass Foundry Co. v. Shapiro & Aronson, 278 F. 435, 442–444 (C.C.A.3), which contains the fullest discussion I have found of this point.

■ Marking is an in rem form of notice good against all the world. Notice of infringement is individual, and must be brought home in personam against the infringer when complaint is made of his acts.

■ It is not the number of articles seen by the defendant which is controlling on an issue of marking—the only issue here— but whether the patentee performed his statutory duty which was a prerequisite to his in rem notice to the world, and hence, failing personal notice to the infringing defendant, a condition precedent to his cause of action for damages or accounting for profits. Dunlap v. Schofield, 152 U.S. 244, 248, 14 S.Ct. 576, 38 L.Ed. 426; General Motors Corporation v. Leer Auto Supply Co., 60 F.(2d) 902, 907 (C.C.A.2).

■ Language could hardly be clearer as to the duty of a patentee or those in privity with him to mark patented articles sold by them than is the language of Rev. St. § 4900, as amended (35 U.S.C.A. § 49). It is, I think, therein explicit that there must be marking of every patented article sold—subject, of course, to the implied

exception of de minimis, as, for example, failure by mistake to mark a few articles in hundreds of thousands made and sold might not, I venture, be ground for refusing an accounting. But such approximately perfect compliance with the marking provisions of the statute is not here before me.

IX. Under the somewhat unusual circumstances here shown, from which the defendant's knowledge of the trespass may be fairly inferred, I confess that I feel somewhat inhospitable to approving the special master's ruling that the defendant need not account. I cannot, however, substitute an atmospheric foundation for the statutory foundation of an accounting as the plaintiff would have me do.

Indeed, the result reached by the special master seems to me inescapable in view of the provisions of the marking statute with which, in the absence of notice, compliance has been uniformly required in this circuit as a condition precedent to recovery of damages or an accounting for profits in patent causes. General Motors Corporation v. Leer Auto Supply Co., 60 F.(2d) 902, 907 (C.C.A.2); Trussell Mfg. Co. v. Wilson-Jones Co., 50 F.(2d) 1027 (C.C.A.2); Crier v. Innes, 170 F. 324 (C.C.A.2); Westinghouse Electric & Manufacturing Co. v. Condit Electrical Co., 159 F. 154, 155 (C.C.S.D.N.Y.); Traver v. Brown, 62 F. 933, 935 (C.C.Vt.). Cf. also, Franklin Brass Foundry Co. v. Shapiro & Aronson, 278 F. 435 (C.C.A.3); Matthews & Willard Mfg. Co. v. Natural Brass & Iron Works (C.C.) 71 F. 518.

X. The patent here involved, No. 1,533,858, was issued on April 14, 1925. Before that, Hazeltine, the patentee, had granted an exclusive license under it, when issued, to Independent Radio Manufacturers, Inc., hereinafter called I. R. M., with a right to grant sublicenses. Fourteen such sublicenses were granted.

On June 6, 1927, I. R. M. was eliminated by agreement with the plaintiff, and the plaintiff, which had in 1924 acquired Hazeltine's rights under the patent and under the contract with I. R. M., granted renewed licenses to nine of the original licensees of I. R. M. and four new licenses to others.

■ The license, granted by Hazeltine, the patentee, to I. R. M., all the sublicenses granted by it, and all the licenses granted by the plaintiff contained a provision obliging the licensees to mark articles embodying Hazeltine's "Method and Means for Neutralizing Capacity Coupling in Audions" patented under the patent here involved. By this practical construction of the situation against their interest, therefore, the patentee and those in privity with him precluded themselves from contending—if indeed such a contention could properly have been made—that their patent was for a process only and hence need not be marked.

■ XI. By the elimination of I. R. M., and the substitution of the plaintiff not only as owner but also as licensor, a change in what may appropriately be called the domestic arrangements of the patentee was effectuated. This led to a division, by the special master of the marking and sale of the patented articles—radio receiving sets—into two periods, that before July 1, 1927, and that between July 1, 1927 and December 31, 1927, during which, on November 28, 1927, the instant suit was brought.

The special master in dealing with the question of marking which was the only issue as to the foundation of the accounting before him in this suit, therefore, separated these two periods and said:

"The result of the stipulations and testimony as to marking is as follows:

|  | Marked | Not Marked |
|---|---|---|
| Prior to July 1, 1927 | 145,000 | 165,000 |
| Amrad | 4,498 |  |
| F. A. D. Andrea, Inc. | 36,973 | 642 |
| Stromberg-Carlson Co. | 12,579 |  |
| Freed Eiseman Co. | 35,245 |  |
| Crosley Radio Corporation | 155,708 |  |
| A. H. Grebe & Co. |  | 14,578 |
| Phila. Storage &c. Co. |  |  |
| United States Electric Co. |  | 7,229 |
| Howard Mfg. Co. | 0 | 0 |
| Wm. J. Murdock Co. |  |  |
| Eagle Radio Co. |  |  |
| Gilfillan Radio Corp. |  | 13,679 |
| King-Hinners Radio Co. |  |  |
| Totals | 390,003 | 201,128" |

These records of markings are based on findings of fact as favorable to the plaintiff as they properly can be on the record before me, wherefore the defendant filed its moot exceptions thereto.

It will be seen from examining these figures that, as I calculate it—(1) prior to July 1, 1927, during the I. R. M. period, circa 46.7 per cent. of the radio receiving sets manufactured were marked; (2) during the whole period of manufacture up to December 31, 1927, circa 65.79 per cent.

of such sets were marked, and (3) even during the plaintiff's own control of the situation after July 1, 1927, circa 87 per cent. only were marked.

Under the authorities this is certainly not adequate marking to comply with Rev. St. § 4900, as amended (35 U.S.C.A. § 49).

**XII.** None of the licensees either of I. R. M. or of the plaintiff was an exclusive licensee, and so none of them had any locus standi to maintain suits for infringement of the patent. Cf. Western Electric Co. v. Pacent Reproducer Corp., 42 F.(2d) 116, 118 (C.C.A.2), and cases there cited. Consequently, the plaintiff, as owner of the patent—and before it I. R. M. as exclusive licensee and so pro hac vice owner thereof—were the only possible plaintiffs who could have claimed damages or profits for an infringement after the patent and on whom the sanction of the marking statute could have operated to prevent an accounting.

Therefore, as the issue of notice is not here involved, the plaintiff herein, for itself and in respect of any rights or interests which it may have secured from Hazeltine, the patentee, or from I. R. M., must be deemed the "party failing so to mark" in the words of the statute, and so not entitled to damages against or an accounting for profits from the defendant herein.

**XIII.** The plaintiff, however, contends—invoking the recent case of Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736—that it is not prevented from having an accounting by the provisions of the marking patent, because it has not manufactured articles under the statute on which it founds its claim therefor.

I do not agree with this contention, for the reason that the plaintiff, although not a manufacturer of the patented articles, granted licenses for the making and sale thereof for or under it, and so comes directly within the marking statute and cannot successfully invoke the principle taught by the case of Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., wherein plaintiff, which got its accounting notwithstanding its failure to comply with the marking statute, was merely the passive owner of an entirely unexploited patent.

Cf. 297 U.S. 387, at page 393, 56 S.Ct. 528, 529, 80 L.Ed. 736.

If I consider the period before the plaintiff granted licenses under the patent, the remarks just made apply with equal force to Hazeltine, the patentee, and to I. R. M. as exclusive licensee thereunder with the privilege of sublicensing.

**XIV.** It seems to me that there is only one other question necessary to consider herein, namely, whether, when the right to an accounting depends on personal notice of infringement, and such notice has not been given to the defendant before commencement of suit, the filing of the bill of complaint and service thereof on the defendant constituted ipso facto such a compliance with the Rev.St. § 4900, as amended (35 U.S.C.A. § 49), in respect of the notice branch thereof as to constitute a basis for an accounting for infringements by the defendant occurring pendente lite.

On principle the answer to this question is, I think, obviously in the negative, and I so hold. In so doing I think that I am supported by the authorities. Marsh v. Nichols, Shepard & Co., 128 U.S. 605, 616, 9 S.Ct. 168, 32 L.Ed. 538; General Motors Corporation v. Leer Auto Supply Company (C.C.A.) 60 F.(2d) 902, 907; Franklin Brass Foundry Co. v. Shapiro & Aronson, 278 F. 435, 442-444 (C.C.A.3); Gibson v. American Graphophone Co., 234 F. 633, 635 (C.C.A.2).

In this decision I regret to find myself disagreeing with so experienced a patent judge as Judge Campbell of the Eastern District, vid. Allied Metal Stamping Co. v. Standard Electric Equipment Corporation (D.C.) 57 F.(2d) 296, at page 304, but I am comforted in my position by what the Supreme Court said in Marsh v. Nichols, Shepard & Co., 128 U.S. 605, at page 616, 9 S.Ct. 168, 172, 32 L.Ed. 538 (italics mine): "The position that an accounting for profits earned subsequently could be claimed in this suit is not tenable. An accounting for such profits *after suit* can be demanded only where *the infringement complained of took place previously and continued afterwards.*"

As is pointed out by Judge Morris, writing for the Circuit Court of Appeals for the Third Circuit, when he quotes the above extract from the Marsh opinion in Franklin Brass Foundry Co. v. Shapiro & Aronson, 278 F. 435, at page 443, in order to have recovery for an infringement

in which either damages or an accounting based on notice is sought, the plaintiff must show that, *before commencement of suit,* there was a notice of infringement given to the defendant, and thereafter an act of infringement by the latter. 278 F. 435, at pages 443, 444. That is my view.

What the Supreme Court meant in the quotation above made from the Marsh Case when it spoke of accounting for profits from infringements after suit, was, as I understand it, that after there is a perfected cause of action for damages or accounting for infringement shown at the trial, it would be an unnecessary duplication of effort not to allow the accounting to cover infringements, certainly of the same kind, *continuing* after suit, for the wise rule of judicial husbandry in equity is that, where it can be avoided without violating any rights of the parties, two suits should never be allowed to spring up where there was at first but one.

It is, however, only by violating the universally recognized right of a defendant not to have any recovery against him except on a perfected cause of action, that the plaintiff's contention herein on this point can be sustained, and the service of the bill of complaint itself be held adequate notice under R.S. § 4900, as amended (35 U.S.C.A. § 49), on which to base an accounting for subsequent infringements only.

The best that can be said for such a procedure is that it is a convenient juridical short cut by which to reach the defendant's purse and property. But judicially devised procedural short cuts, are, it seems to me, always to be avoided because it is wholly impossible to foresee and adequately chancer a priori all their implications.

It seems to me, therefore, that the proper procedure to be followed in respect of infringements occurring only after suit has been brought would be to file another bill of complaint or a supplemental bill of complaint in which reliance could properly be placed on the orginal bill of complaint as *notice of infringement in personam to* the defendant therein.

The plaintiff here, therefore, is not in a position wherein it can claim an accounting in this cause for profits from infringements, if any, occurring after November 28, 1927, when the bill of complaint was filed herein, assuming that such infringements could after this length of time be segregated from those occurring before suit was commenced.

XV. Unless the form thereof be agreed, an order in accordance with this opinion may be presented to me through the clerk's office for settlement on three days' notice.